THE TOWN OF WEST HOBOKEN, THE TOWN OF WEST NEW YORK, THE TOWN OF UNION, THE TOWNSHIP OF NORTH BERGEN, THE TOWNSHIP OF WEEHAWKEN, PROSECUTORS, v. THE COUNTY BOARD OF COMMISSIONERS OF APPEAL IN CASES OF TAXATION IN THE COUNTY OF HUDSON ET AL.

Argued November 13, 1900—Decided February 25, 1901.

1. A special law applicable to a single county providing a method for securing a uniform assessment for taxes in the county was not repealed by the adoption of that amendment to the constitution which provides that "property shall be assessed for taxes under general laws and by uniform rules according to its true value," where the general law uses different machinery for accomplishing the same result.

2. The notice required to be served upon the individual taxpayer by the sixth section of an act entitled "An act creating a county board of commissioners of appeal in cases of taxation and for equalizing assessments for taxes in the county of Hudson" (*Pamph. L.* 1873; *p.* 794), is dispensed with as to assessments for real estate only, by the act entitled "An act concerning taxes and the equalization of values," approved May 22d, 1894. *Gen. Stat.*, *p.* 3450.

On *certiorari.*

Before Justices GARRISON and GARRETSON.

For the prosecutors the town of West Hoboken and West New York, *Augustus A. Rich.*

For the prosecutor the town of Union, *Horace L. Allen.*

For the prosecutor the township of North Bergen, *Emil J. Walscheid.*

For the prosecutor the township of Weehawken, *Henry M. Nutzhorn.*

For the defendant, *William D. Edwards.*

The opinion of the court was delivered by

GARRETSON, J.   Five writs of *certiorari* were allowed to remove the action of the county board of commissioners of appeal in cases of taxes and for equalizing assessments of taxes in the county of Hudson, upon the several applications of the town of West Hoboken, town of West New York, town of Union, township of Weehawken and township of North Bergen.

The reasons filed were identical in all the cases, save only that in the case of the township of North Bergen reasons additional were filed attacking the existence of the county board, and claiming that the act under which it was created was repealed by implication by the adoption, in 1875, of that amendment to the constitution which provides that "property shall be assessed for taxes under general laws and by uniform rules according to its true value."

The county board exists by virtue of an act of the legislature entitled "An act creating a county board of commissioners of appeal in cases of taxation and for equalizing assessments for taxes in the county of Hudson," approved April 4th, 1873. *Pamph. L., p.* 794. This act substitutes the board thereby created for the board of assessors provided for in the General Tax law, and imposed upon it substantially the same duties.

The action of the county board which calls forth the application for these writs was in adopting a resolution adding to the aggregate values returned by the several assessors of the prosecutors, different percentages thereby fixing and ad- ·justing the proportion or quota of the assessment for each town and township.

It is required of the board of assessors by the General Tax law (*Gen. Stat., p.* 3309, § 140), that if it shall appear to the assessors, "from a careful, particular and thorough com- parison of the said respective duplicates, that the value of the property contained in any duplicates is relatively less than the value of other property in the county, they may, for the purpose of fixing and adjusting the said proportion or quota, and for that purpose only, add thereto such per-

centage as shall appear to them just and proper and warranted by said comparison, but not otherwise "

By the special act creating the board for Hudson county (*Pamph. L.* 1873, *p.* 794) the commissioners are to examine the assessors, upon oath, and to examine witnesses as to the valuations, for the purpose of equalizing the same between the several assessment districts," and if it shall appear to said commissioners that the value of the property contained in any duplicate is relatively less than the value of other property in the county, they may, for the purpose of fixing and adjusting the said proportion or quota, and for that purpose only, add thereto such percentage as shall appear to them just and proper, but not otherwise."

In *Rexroth* v. *Ames,* 26 *Vroom* 509, Mr. Justice Van Syckel says: "The county board of assessors meet only for the purpose of determining how much each township and borough shall contribute to the state and county tax, and the valuations by the county board are exclusively for the purpose of adjusting such quota."

This is the same and only duty imposed upon the Hudson county board.

While under the constitution assessments for taxes must be according to true value, yet it is held that the constitutional provision requires and is satisfied by such regulations as should impose the same percentage of its actual value upon all taxable property in the township for township purposes, in the county for county purposes and in the state for state purposes. *Stratton* v. *Collins,* 14 *Vroom* 562

It may happen, however, that the assessors of the different districts may not only not take true value, but take different percentages of actual value for assessments, in their several taxing districts, and to correct this and make the assessments uniform these boards exist.

The boards do not make any assessment; they do not fix the amount to be raised by taxation in the county; they only determine what portion of the amount already fixed shall be paid by each district, and in order that the tax may be uniform throughout the county, and that all property shall

pay an equal proportion of the taxes, these boards are created to see that the assessment in all the districts in the county is the true value of the property therein or a uniform percentage thereof.

The county board of assessors, under the general law, and the county board for Hudson county, under the special law, are only machinery for reaching a uniform assessment.

By the sixth section of the act of 1873 the books of the assessors are to be returned to them on the second Wednesday in June, or as soon thereafter as the commissioners can, and each assessor is forthwith required to serve on each taxpayer a notice of the gross amount of his assessment; this notice must contain the fact that the taxpayer may appear before the commissioners in ten days from the service.

This court held, in *Clark Thread Co.* v. *Kearny,* 26 *Vroom* 50, that this notice must be served, notwithstanding the proviso at the end of the section "that no assessment shall be illegal for want of service of the above notice."

The board held its first meeting on the first Monday of June, as provided by the act, but the assessors did not, on that day, as required, bring before the commissioners their field-books. It seems from the return that they appeared at various times with their books before the commissioners; the first on July 9th, some on July 10th and some on July 12th, all a month after the time required by law. At the first meeting, June 4th, the board fixed July 6th to July 19th to sit as commissioners of appeals (but the matter from which the taxpayer might appeal was not determined until August 6th).

On the 2d of August a resolution was adopted ordering their books to be returned to the assessors, and on the 6th of August the board passed resolutions adding certain percentages and amounts to the total assessments as returned by the respective assessors, and upon the same day, and at the same meeting, made the apportionment of the state and county tax.

There was, therefore, no opportunity for the service of the notice upon the individual taxpayer required by the act, be-

cause the matter from which the appeal might be taken was settled, and the apportionment, which depended upon the results of the appeals, were both settled at the same meeting of August 6th.

The return also contains a letter, under date of July 19th, 1900, advising the county board that notices to the individual taxpayers were not necessary when the assessment of an entire district was increased by a percentage.

It does appear that the board ordered paid, on July 9th, 17th and 18th, bills of the assessors for serving notices, aggregating upwards of eight hundred dollars. What these notices were we have no means of knowing, but we do know they were not notices to individual taxpayers of the adjusted and corrected assessments, because they were paid for, and must have been served long before the assessments were adjusted and corrected, which was done August 6th.

We therefore conclude that the notices required to be served by the sixth section of the act and the case of *Clark Thread Co.* v. *Kearny, supra,* were never served.

Since the case of Clark Thread Co. *v.* Kearny was decided, in November, 1892, the legislature passed an act entitled "An act concerning taxes and the equalization of values," approved May 22d, 1894 (*Gen. Stat., p.* 3450), which dispenses with any notice to the individual taxpayer when there has been an increase or diminution of the aggregate value of the *real estate* contained in any assessment as returned, leaving notice requisite where any particular piece of real estate is affected. This act, therefore, dispensed with the notice required by the sixth section of the act of 1875 so far as real estate was concerned, but left the notice necessary so far as personal estate, in the aggregate, was affected by the increase.

The assessments for the real estate and the personal property appear separately in the return, and the increased percentage can be easily calculated on each separately. We therefore conclude that so far as the assessment of the personal property was increased, the action of the board should be set aside, and so far as the assessment of the real estate was increased, the action of the board should be confirmed.